**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Danny Miller, | ) No. CV-04-19-PHX-DGC (LOA) |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Donald Sloan, Facility Health Administrator; Ronolfo Macabuhay, Healthcare Provider; and Richard Pratt, Medical Services Administrator, in their individual and official capacities, | ) |
| Defendants. | ) |

Pending before the Court are the parties' motions for summary judgment. Docs. ##59, 72. For the reasons set forth below, the Court will deny Plaintiff's motion and grant Defendants' motion in part.

## Background

Plaintiff Danny Miller is an inmate at the Arizona State Prison Complex-Lewis. Defendant Ronolfo Macabuhay is a physician who provides medical care to the prison's inmates. Defendants Donald Sloan and Richard Pratt are facility health administrators in charge of organizing and evaluating the prison's healthcare system.

Plaintiff commenced this action by filing a pro se civil rights complaint against Defendants on January 5, 2004. Doc. #1. Plaintiff alleges in an amended complaint that

1    Defendants violated his Eighth Amendment rights by being deliberately indifferent to his

2    serious medical needs. Doc. #50. Specifically, Plaintiff alleges that he has irritable bowel

3    syndrome ("IBS") and that Defendants failed to renew his Metamucil and Bentyl

4    prescriptions because they were too expensive and refused his request for a "no spice"

5    diet because he was not allergic to spices. *Id.*

6                                      **Discussion**

7    **I.    Summary Judgment Standard.**

8         Summary judgment is appropriate if the evidence, viewed in the light most favorable

9    to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and

10   that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*

11   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Substantive law determines which

12   facts are material and "[o]nly disputes over facts that might affect the outcome of the suit

13   . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,*

14   *Inc.*, 477 U.S. 242, 248 (1986). Similarly, to preclude summary judgment the dispute must

15   be genuine, that is, "the evidence [must be] such that a reasonable jury could return a

16   verdict for the nonmoving party." *Id.*

17   **II.    Analysis.**

18        **A.    The Eighth Amendment's Deliberate Indifference Standard.**

19        Prison officials "violate a prisoner's Eighth Amendment rights if they are

20   deliberately indifferent to his serious medical needs." *Anderson v. County of Kern*, 45 F.3d

21   1310, 1316 (9th Cir. 1995) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). Deliberate

22   indifference "may appear when prison officials deny, delay, or intentionally interfere with

23   medical treatment, or it may be shown by the way in which prison physicians provide

24   medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*,

25   429 U.S. at 104-05). "The indifference to medical needs must be substantial; a

26   constitutional violation is not established by negligence or 'an inadvertent failure to

27   provide adequate medical care.'" *Anderson*, 45 F.3d at 1310 (quoting *Estelle*, 429 U.S. at

28   105-06).

**B.    The Bentyl and Metamucil Prescriptions.**

Plaintiff visited Dr. Macabuhay on December 10, 2001, complaining of chronic diarrhea and stomach pain.  Dr. Macabuhay diagnosed Plaintiff with IBS and prescribed him Metamucil fiber and Bentyl, an abdominal muscle relaxer and pain reliever.  Docs. ##60 ¶¶ 2-5, 73 ¶¶ 3, 11-14.[1]  On April 24, 2002, Dr. Macabuhay renewed Plaintiff's Bentyl prescription and informed him that Metamucil was available at the inmate store.  Docs. ##60 ¶¶ 7-8, 73 ¶ 27.  Plaintiff has testified that Dr. Macabuhay told him that he would have to purchase Metamucil from the inmate store because "the medical department was cutting back on expenses."  Doc. #60 ¶ 8.  Plaintiff has further testified that on June 4, 2002, Dr. Macabuhay refused to renew his Bentyl prescription because it was too expensive.  *Id.* ¶ 11.

Defendants dispute this testimony, stating that medication is never denied due to cost and that at no time did Dr. Macabuhay refuse to prescribe Plaintiff Bentyl for any reason.  Doc. #73 ¶¶ 87, 90-91.  Defendants further state that, unlike the prescription drug Bentyl, Metamucil generally must be purchased from the inmate store unless it is medically necessary and the inmate is indigent, in which case Metamucil is provided to the inmate at no cost.  Docs. ##73 ¶¶ 88-89, 84 ¶¶ 5-6.

"Budgetary constraints . . . do not justify cruel and unusual punishment."  *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) (citing *Spain v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979)).  Given the conflicting testimony above, whether Plaintiff was denied a

---

[1]IBS is a gastrointestinal disorder characterized by altered bowel habits and abdominal pain.  Docs. ##60 ¶ 5, 72 ¶ 14.  Defendants admit that IBS can adversely affect a person's quality of life and that Plaintiff suffered from and was treated for IBS.  Doc. #72 ¶¶ 12-16.  There is thus no genuine dispute that Plaintiff had a serious medical need.  *See, e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."), *overruled on other grounds*, *WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

1   Bentyl prescription due to its cost is a factual issue that must be resolved by a jury.

2   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Credibility determinations,

3   the weighing of evidence, and the drawing of inferences from the facts are jury functions,

4   not those of a judge[.]"); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of

5   credibility, including questions of intent, should be left to the jury.").  The Court will deny

6   the motions for summary judgment with respect to Plaintiff's claim that he was denied a

7   Bentyl prescription because it was too expensive.

8       With respect to Plaintiff's claim that he was denied Metamucil, however, Plaintiff

9   has presented no evidence that he was indigent or unable to purchase Metamucil from the

10  inmate store.  The Court will grant summary judgment in Defendants' favor with respect

11  to this claim.  *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir.

12  1985) (holding that the imposition of a three dollar fee for each medical visit did not state

13  a claim of deliberate indifference because the plaintiff did not allege how the fee affected

14  him or that prison officials denied medical care to indigent prisoners).

15      **C.    The Special Diet Request.**

16      On June 4, 2002, Dr. Macabuhay prescribed Plaintiff a "no spice" diet in response

17  to Plaintiff's complaint that spicy foods exacerbated his IBS.  Docs. ##60 ¶¶ 10-11, 73 ¶ 31.

18  On June 10, 2003, Dr. Macabuhay renewed Plaintiff's prescription for a "no cayenne pepper

19  or chili powder" diet.  Docs. ##60 ¶ 14, 73 ¶ 45.  One week later, Dr. Macabuhay noted in

20  Plaintiff's medical chart that the diet request had not been approved because Plaintiff had

21  not received an allergy test for cayenne or chili peppers, the only spices used in the

22  prison's kitchen.  Docs. ##60 ¶ 14, 73 ¶¶ 45-47, 57.  Plaintiff promptly received an allergy

23  test, which came back negative for cayenne and chili peppers.  Doc. #73 ¶¶ 48-50.

24      Plaintiff subsequently filed grievances regarding the denial of his diet request.

25  Docs. ##60 ¶¶ 16-21, 73 ¶¶ 56-61, 80 ¶¶ 25, 31, 33-34.  The grievances were denied because

26  Plaintiff was not allergic to cayenne or chili peppers and his IBS was not a direct result of

27  spices in his diet.  *Id.*  Plaintiff was later provided with a "low residue/no spice" diet in

28  August 2004.  Doc. #60 ¶ 24.

1   Plaintiff contends that the discontinuation of his special diet "is a classic case of
2   deliberate indifference."  Doc. #59 at 9-10 (citing *Hunt v. Dental Dep't*, 865 F.2d 198, 200-01
3   (9th Cir. 1988)).  Defendants argue that not providing Plaintiff with a special diet was a
4   reasonable response to his medical needs because Plaintiff was not allergic to spices
5   and continued to have diarrhea and stomach pain even when he was on a no spice diet.
6   Docs. ##72 at 11, 73 ¶ 83.

7   Construed in Plaintiff's favor, the evidence shows, at most, that Defendants were
8   negligent in failing continuously to provide Plaintiff with a special diet.  Medical staff
9   examined and treated Plaintiff numerous times after he was diagnosed with IBS.  Doc. #73
10  ¶¶ 19-46, 49-51, 55.  Plaintiff received a test to determine if he was allergic to cayenne and
11  chili peppers – the only spices used in the prison's kitchen – and was denied a no spice
12  diet because his test results were negative.  Docs. ##60 ¶ 14, 73 ¶¶ 45-50, 57, 80 ¶ 25.
13  Because Plaintiff cannot show that Defendants purposefully ignored or failed to respond
14  to his medical needs, he cannot establish deliberate indifference.  *See McGuckin v. Smith*,
15  974 F.2d 1050, 1060 (9th Cir. 1992) ("A defendant must purposefully ignore or fail to
16  respond to a prisoner's pain or possible medical need in order for deliberate indifference
17  to be established."), *overruled on other grounds*, *WMX Tech., Inc. v. Miller*, 104 F.3d 1133
18  (9th Cir. 1997); *Estelle v. Gamble*, 429 U.S. 97, 106-07 (1976) ("Medical malpractice does not
19  become a constitutional violation merely because the victim is a prisoner."); *Frost v.*
20  *Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) ("Mere negligence in the provision of medical
21  care . . . does not constitute a constitutional violation."); *Wood v. Housewright*, 900 F.2d
22  1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the
23  level of constitutional violation, mere malpractice, or even gross negligence, does not
24  suffice."); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) ("'[A] difference of medical
25  opinion as to the need to pursue one course of treatment over another [is] insufficient, as
26  a matter of law, to establish deliberate indifference.") (citation omitted).  The Court will
27  grant summary judgment in favor of Defendants with respect to Plaintiff's claim that he was
28  denied a special diet.  *See Toussaint v. McCarthy*, 801 F.2d 1080, 1112 (9th Cir. 1986)

1    ("Neither precedent nor common sense suggests that delay in providing a special diet

2    arises to the level of deliberate indifference.").[2]

3          **D.    Qualified Immunity.**

4          Defendants argue that they are entitled to qualified immunity because the

5    constitutional right in question was not clearly established.  Doc. #72 at 12-15.  The Court

6    disagrees.  "It is settled law that deliberate indifference to serious medical needs of

7    prisoners violates the Eighth Amendment." *Jackson*, 90 F.3d at 332 (citing *Estelle*, 429 U.S.

8    at 104).  "For a right to be clearly established it is not necessary that the very action in

9    question have previously been unlawful.  To define the law in question too narrowly would

10   be to allow [D]efendants 'to define away all potential claims.'" *Id.* (citations omitted).

11   Moreover, with respect to Plaintiff's claim that he was denied a Bentyl prescription, it is

12   clear under the law of this Circuit that prisoners cannot be denied treatment due to

13   budgetary constraints, the issue on which Plaintiff has raised a question of fact.  *See Spain*

14   *v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir.

15   1986).  The Court will deny Defendant's motion for summary judgment with respect to this

16   issue.

17         **E.    Eleventh Amendment Immunity.**

18         Defendants argue that the Eleventh Amendment to the United States Constitution

19   bars any monetary claims against them to the extent they have been sued in their official

20   capacities.  Doc. #72 at 15 (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("It is . . . well

21   established that even though a State is not a named party to the action, the suit may

22   nonetheless be barred by the Eleventh Amendment.")).  Plaintiff does not respond to this

23   argument.  *See* Docs. ##78-79.  The Court finds the argument well-taken and will grant

24   Defendant's motion for summary judgment on Plaintiff's claims for monetary damages.

25

26         [2]Plaintiff's reliance on *Hunt* is misplaced because evidence in that case showed that
     the defendants deliberately failed to provide the plaintiff with any dental care despite the
27   plaintiff's repeated complaints that the loss of his dentures was causing severe pain and
     permanent damage to his teeth. 865 F.2d at 200-01.
28

1        **IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc. #59) is **denied**.

2        **IT IS FURTHER ORDERED** that Defendants' cross motion for summary judgment

3  (Doc. #72) is **granted in part** and **denied in part** as set forth in this order.

4        The Court will set a pretrial conference by separate order.

5        DATED this 28th day of November, 2005.

David G. Campbell
United States District Judge

- 7 -